UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL ROLES,

Plaintiff,

v.

Case No. 24-cv-11455
Honorable Linda V. Parker

HENRY FORD HEALTH SYSTEM, and
HENRY FORD HOSPITAL,

Defendants.
______________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 29)**

Defendants Henry Ford Health Systems (HFHS) and Henry Ford Hospital (collectively "Defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on each of Plaintiff Crysal Roles' ("Plaintiff") ten claims arising from Defendants' termination of her employment assignment.

## I. Factual and Procedural Background

Plaintiff, born in 1969, is an African-American registered nurse. (ECF No. 1 at PageID.11 ¶ 97, PageID.2 ¶ 7.) Plaintiff was employed by ProLink Healthcare, which contracts with hospitals to provide temporary nurses as needed. (ECF No. 29-3 at PageID.276-77.) Plaintiff was assigned to work for twelve weeks in Henry Ford Hospital's Intensive Care Unit (ICU) beginning August 30, 2022. (ECF No. 29-4 at PageID.280; ECF No. 29-3 at PageID.277.)

Despite some confusion regarding the logistics of her onboarding, Plaintiff completed her orientation on August 31, 2022, and was permitted to begin working thereafter. (ECF No. 29-6 at PageID.294.) During her shifts, Plaintiff was typically assigned two patients. (ECF No. 29-6 at PageID.294-95.) Yolanda Thompson (Thompson) supervised the Surgical ICU while Plaintiff worked at Henry Ford Hospital. (ECF No. 29-5 at PageID.285.)

On September 21, 2022, Charge Nurse Kyra Bunn informed Thompson of some safety concerns arising from Plaintiff's shift the day before. (ECF No. 29-9 at PageID.315-16.) These concerns included, *inter alia*, the low blood pressure and slow heartbeat of one of Plaintiff's patients, Plaintiff's maintenance of a fentanyl drip for this patient despite such conditions, and Plaintiff's failure to respond while the patient's "ART line alarm was alarming." (*Id.*) Bunn's email also states that Plaintiff was "sitting behind the nurse's station on her phone" while her patient was "alarming." (*Id.*) Plaintiff denies administering fentanyl in the manner alleged and contends that other nurses were also responsible for monitors and alarms. (ECF No. 31-1 at PageID.556, 558.)

This patient's daughter called Henry Ford Hospital around 10:30 pm on September 21, 2022, reporting that, "she was concerned because she received a call from her mother that she had been asking to go back to bed for a while now but [Plaintiff] [had] not helped her." (ECF No. 29-9 at PageID.316.)

Thompson reviewed the information provided by Bunn and the patient's medical chart and "independently determined that Ms. Bunn's concerns were valid." (ECF No. 29-7 at PageID.308.) Thompson decided to end Plaintiff's assignment with HFHS. (*Id.*) Plaintiff responded by filing an EEOC complaint and then this lawsuit.

On June 3, 2024, Plaintiff filed a ten-count Complaint against Defendants alleging as follows: (I & II) discrimination in violation of Title VII of the Civil Rights Act and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), respectively; (III & IV) retaliation in violation of Title VII and ELCRA, respectively; (V) race discrimination in violation of 42 U.S.C. § 1981; (VI) hostile work environment in violation of ELCRA; (VII) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (VIII) harassment in violation of ELCRA; (IX) retaliation in violation of the ADEA; and (X) wrongful discharge in violation of Michigan's public policy. (*See generally* ECF No. 1.)

Plaintiff claims her race, age, and complaints about the scheduling and orientation process were motivating factors in Defendants' decision to terminate her assignment. (ECF No. 33 at PageID.477 ¶ 23.) She claims that "younger, non-African-American nurses engaged in comparable or more serious conduct" without being terminated. (ECF No. 32 at PageID.448 (citing ECF No. 33 at PageID.476-77 ¶¶ 11-23).) Three days after her termination, ProLink asked Plaintiff to respond

to Defendants' reasons for terminating her assignment. (ECF No. 29-11 at PageID.322-23.) In her response, Plaintiff did not cite her race, age, or protected activity as factors she believed motivated the termination decision. (*Id*. at PageID.322.)

On October 24, 2025, Defendants filed their summary judgment motion. (ECF No. 29.) Plaintiff responded on December 23, 2025. (ECF No. 32.) Defendants filed a reply brief on January 1, 2026. (ECF No. 34.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## II. Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record . . .." Fed. R. Civ. P. 56(c)(1). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]" *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990). It is not the court's responsibility to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g.*, *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *see also InterRoyal Corp.*, 889 F.2d at 111 ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

## III. Applicable Law and Analysis

### a. Race and Age Discrimination (Counts I, II, V, VII, and VIII)

As indicated, Plaintiff asserts race discrimination claims under Title VII, ELCRA, and § 1981. She also claims age discrimination under the ADEA and ELCRA. "When construing ELCRA, Michigan courts look to Federal Title VII jurisprudence to guide [their] interpretation." *Kennedy v. Aspen Techs. Inc.*, 965 F.3d 443, 451-52 (6th Cir. 2020) (quoting *Rodrigues v. Delta Airlines, Inc.*, 644 F. App'x 629, 633 (6th Cir. 2016)). This is true for § 1981 claims as well. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) ("The elements of [the] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981.") (collecting cases). ADEA claims are evaluated similarly. *See Deleon v.*

*Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citing *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002)).

To prevail on these claims, "a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002) (citing *Johnson*, 215 F.3d at 572). Plaintiff has not offered any direct evidence of discrimination. As such, "the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . applies to the present case." *Id.* (citing *Johnson*, 215 F.3d at 572).

"Under the *McDonnell Douglas* framework, the plaintiff faces the initial burden of presenting a prima facie case of discrimination." *Id.* (citing *Johnson*, 215 F.3d at 572). When established, a prima facie case "creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, non-discriminatory reason' for taking the challenged action." *Id.* (quoting *Johnson*, 215 F.3d at 573). If the defendant satisfies this burden, the plaintiff must then "prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Johnson*, 215 F.3d at 573 (citing *McDonnell Douglas*, 411 U.S. at 802). A plaintiff may do so by showing that Defendants' stated reason for the adverse employment action either "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's actions." *Levine v.*

*DeJoy*, 64 F.4th 789, 798 (6th Cir. 2023) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)).

i. Plaintiff Fails to Establish a Prima Facie Case of Race or Age Discrimination

To establish a prima facie case of race discrimination, the plaintiff must show that she (1) was a member of a protected class, (2) was qualified for her position, (3) suffered an adverse employment action, and (4) was replaced by an individual outside of her protected class or that a "comparable non-protected person was treated better." *Vaughn*, 291 F.3d at 906; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992) (collecting cases).

Defendants do not dispute that Plaintiff establishes the first and third elements of the *McDonnell Douglas* test. Plaintiff is African-American and over forty years old (element one) and was terminated from her position with HFHS (element three). Rather, Defendants contend that Plaintiff cannot establish the second or fourth elements of her prima facie cases. (ECF No. 29 at PageID.251.)

1. Plaintiff Was Objectively Qualified for the Position

Concerning the second element relating to her qualifications for her position, Plaintiff argues that she was qualified because she "was a licensed nurse hired by ProLink and accepted by HFHS based upon her credentials." (ECF No. 32 at PageID.452.) In their response brief, Defendants do not dispute that Plaintiff was objectively qualified for the position when they hired her as an ICU RN.

Defendants assert only that Plaintiff did not meet their expectations, citing her failure to tend to her patient's alarm and a patient complaint. However, "a court may not consider the employer's alleged non-discriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). "To do so would . . . deprive the plaintiff of the opportunity to show that the non-discriminatory reason was in actuality a pretext designed to mask discrimination." *Id.* (citing *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000)). Instead, when evaluating a claim at the prima facie stage, "a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Id.* at 575 (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998)). As discussed above, Defendants do not contest Plaintiff's objective qualifications and focus instead on her failure to meet their expectations. As such, Plaintiff satisfies the second element of her prima facie case of race discrimination.

#### 2. Plaintiff Has Not Established a "Similarly-Situated" Comparator

Regarding the fourth element, Plaintiff must show that she was replaced by an individual outside of her protected class or that a comparable non-protected person was treated better. *See Vaughn*, 291 F.3d at 906; *Mitchell*, 964 F.2d at 582-83 (collecting cases).

"It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." *Mitchell*, 964 F.2d at 583 (citing *Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988)). However, a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709-10 (6th Cir. 2006) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). To be deemed "similarly-situated," comparable individuals must have:

> dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583 (collecting cases).

Defendants argue that Plaintiff has not established this prong of her prima facie case because she "has not identified any employee that replaced her" and has not "identified a similarly situated employee outside of her protected class that allegedly received more favorable treatment." (ECF No. 29 at PageID.253.) At her deposition in this matter on August 27, 2025, when asked whether any employees were not discharged or terminated for doing the same thing she did, Plaintiff responded, "I don't know that, no." (ECF No. 31-1 at PageID.594 ¶¶ 5-8.) Plaintiff responds to Defendants' motion with a declaration, dated December

23, 2025, in which she now offers three examples of "non-African American nurses, who were not subjected to the same level of scrutiny or false accusations regarding their patient care":

> 19. For example, per unit policy monitors and patients are for everyone to attend to, however, a younger white male agency nurse with one patient was sitting closer the ringing monitors and not attending to them, however, he was not disciplined.
>
> 20. For another example, a young white nurse's patient was alarming, however, she was in the room next to the patient with other care workers on a non-emergency, and she faced no discipline.
>
> 21. The same young white nurse was missing off of unit for an extended period of time and many of her patients were alarming, residents even approached asking where this nurse was and no one knew, but she faced no discipline.
>
> 22. As another example, a young white nurse who was the girlfriend of a nurse on our unit would routinely come to our unit and leave her patients, however, no complaints or discipline for this nurse followed.

(ECF No. 33 at PageID.477.)

As an initial matter, Defendants ask the Court to strike or ignore Plaintiff's declaration because it contradicts her deposition testimony. (*See* ECF No. 34 at PageID.600-02.) For a Court to consider a declaration on summary judgment, the declaration "*must be made on personal knowledge*, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added). Many of the allegations in Plaintiff's declaration do not appear to be based on her personal

knowledge and are speculative in nature, including paragraphs 16-17, 19-23. (*See* ECF No. 33 at PageID.477.) Some allegations include statements beginning with "I believe," and others discuss the disciplinary history of employees without establishing how Plaintiff knows whether another employee faced discipline or received any complaints. (*See id.* at PageID.476-77.) The Court tends to conclude that at least part of Plaintiff's declaration would not be admissible in evidence and therefore falls outside the set of facts the Court can consider on summary judgment pursuant to Rule 56.

Even assuming, *arguendo*, that Plaintiff's declaration was admissible in evidence, her claims still fail. In Defendants' reply brief, they argue that Plaintiff's declaration does not create a genuine issue of material fact as to whether similarly-situated individuals were treated differently than Plaintiff. (ECF No. 34 at PageID.600-02.) In support of this contention, Defendants cite *Levesque v. City of Toledo*, No. 10-cv-606, 2011 WL 834080, at *4 (N.D. Ohio Jan. 27, 2011), *report & recommendation adopted in* 2011 WL 834069 (N.D. Ohio Mar. 3, 2011), in which the court found that the plaintiff's declaration was too conclusory of whether other employees committed similar infractions without consequence or with less consequence. *Id.* (citing *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.")).

The court concluded that the plaintiff's evidence did not show that the "comparables" were "similarly-situated *in all respects*[,]" as there was no "evidence that the charges against these individuals were the same, that their conduct was the same, and that they dealt with the same supervisor." *Id.* (citing *Mitchell*, 964 F.2d at 583).

In her declaration, Plaintiff does not provide the names of the purported comparator nurses, whether Thompson also supervised them, or any indication of how she knows that these employees were not disciplined. Plaintiff offers no ages for the alleged "younger" nurses, which gives the Court no way to know whether they were significantly younger than Plaintiff or even under forty years old. *See Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 448 (6th Cir. 2018) (affirming dismissal of the plaintiff's complaint even at the pleading stage where she alleged only that "younger" coworkers were treated differently, finding that the allegation did not state a plausible age discrimination claim). The last "comparator" Plaintiff offers is a nurse from a different unit and does not describe ignoring patient alarms.

Importantly, Plaintiff does not allege that any of her comparators failed to respond to the alarm of a patient *assigned to them* or that a patient complaint was subsequently brought against them. Nor does she describe or apparently know what two of the comparators were doing when patients were "alarming," or monitors were ringing. One comparator was involved with another patient. (*See*

ECF No. 33 at PageID.477 ¶ 20.) Plaintiff does not say that any of them were busy on their personal cellphones, which was what Defendants determined Plaintiff was doing when her patient was alarming and asking to return to bed.

Even still, Plaintiff refers to only one of these nurses (i.e., the younger white male sitting closer to "ringing monitors") as an agency (contract) nurse. (ECF No. 33 at PageID.477 ¶ 19.) It is material whether the other comparators were contract nurses because Thompson testified that contract nurses are not subject to the progressive discipline structure that applies to non-contract nurses.[1] (ECF No. 29-7 at PageID.307 ¶ 8.) Instead, contract nurses are "immediately released if there are patient safety concerns." (*Id.*)

For these reasons, despite a dispute as to which nurse(s) maintained a responsibility to tend to patient alarms, Plaintiff fails to establish that these nurses are similarly-situated to her. As such, a reasonable jury could not find that similarly-situated individuals were treated more favorably than Plaintiff in satisfaction of the prima facie case for her discrimination claims.

---

[1] Non-contract nurses are unlikely to be similarly situated to Plaintiff due to the differences in their terms of employment. *See Perkins v. Harvey*, No. 06-2317, 2009 WL 10701108, at *5 (W.D. Tenn. Mar. 11, 2009) (finding contract and permanent employees not similarly situated "[b]ecause [of] the differences in the terms and conditions of their employment . . .."); *see also McKenna v. Weinberger*, 729 F.2d 783, 789-90 (D.C. Cir. 1984) (same).

The Court is therefore granting summary judgment to Defendants on Plaintiff's discrimination claims (Counts I, II, V, VII, and VIII).

**b. Retaliation in Violation of Title VII, ELCRA, and ADEA (Counts III, IV, and IX)**

Plaintiff also brings retaliation claims under Title VII, ELCRA, and the ADEA. As with her discrimination claims, to prevail on her retaliation claims, she must either present "direct evidence of retaliation or . . . proffer[] circumstantial evidence that would support an inference of retaliation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)) (internal quotation marks omitted). Because Plaintiff has not offered any direct evidence of retaliation, the Court analyzes "Plaintiff's retaliation claim under the burden-shifting framework of *McDonnell Douglas* . . .." *Id.*

To establish a prima facie case of retaliation in violation of Title VII, ELCRA, or the ADEA, Plaintiff must show that (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Id.* (collecting cases). If Plaintiff states a prima facie case of retaliation, the burden shifts to Defendants to provide a

"legitimate, nondiscriminatory reason" for terminating her. *Id.* (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

Plaintiff cannot establish the first element of any of her retaliation claims. Title VII, ELCRA, and the ADEA utilize similar constructions of "protected activity." *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-46 (6th Cir. 2021) (analyzing ELCRA and Title VII protected activity together); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 n.4 (6th Cir. 2015) (citing *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007)) (noting the similarity of ADEA and Title VII anti-retaliation provisions). As courts have indicated in the context of Title VII, these statutes do not protect all "opposition activity." *See Scheske v. Univ. of Mich. Health Sys.*, 59 F. Supp. 3d 820, 827 (E.D. Mich. 2014) (citing *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 751 (6th Cir. 1981)). "For the activity to be protected, a plaintiff must put her employer on notice that she is opposing a practice made unlawful by [the relevant statute]." *Id.* (citing *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 373 (6th Cir. 2013)). "[C]omplaints about management practices or decisions rather than discrimination against a protected class are not protected activities under [these statutes]." *Id.* (collecting cases).

Plaintiff presents her declaration and an email/text string to show that she complained about pay discrepancies and the chaotic, shifting scheduling/orientation process[.]" (ECF No. 32 at PageID.461 (citing ECF No. 33

at PageID.476 ¶ 10 ("I voiced concerns regarding my pay discrepancies and the disorganized orientation process to management"; ECF No. 29-8 at PageID.313-14).) Plaintiff does not allege, much less offer evidence to show, that she expressed that any pay discrepancy or issues with the orientation process were due to her race or age. In fact, she says they were due to the delay in completing her orientation. (*See* ECF No. 1 at PageID.2-3.)

Moreover, when asked during her deposition whether she complained to anybody about the treatment she received while working for HFHS other than the fact that someone stole her earbuds, Plaintiff responded, "No . . . Not to my knowledge." (ECF No. 34-2 at PageID.614.) Regardless of whether Plaintiff complained only about her stolen earbuds or also about the orientation process and the resultant pay delay, these complaints do not constitute protected activity within the scope of Title VII, ELCRA, or the ADEA. *See Scheske*, 59 F. Supp. 3d at 827; *see also Kennedy*, 965 F.3d at 451 (applying Title VII framework to ELCRA retaliation claims); *Deleon*, 739 F.3d at 918 (citing *Policastro*, 297 F.3d at 538) (same for ADEA retaliation claims).

For these reasons, a reasonable jury could not find that Plaintiff engaged in protected activity in satisfaction of element one of the prima facie retaliation case. The Court is therefore granting summary judgment on Counts III, IV, and IX.

**c. Hostile Work Environment/Harassment in Violation of ELCRA (Counts VI and VIII)**

Although the basis of the harassment being alleged in Count VI is unclear in Plaintiff's Complaint (*see* ECF No. 1 at PageID.3 ¶¶ 23-25; *id.* at PageID.10 ¶¶ 84-89), she refers to race-based harassment in her response brief (*see* ECF No. 32 at PageID.445). In Count VIII, she claims harassment based on her age. (ECF No. 1 at PageID.12 ¶ 107.) Plaintiff must satisfy five elements to establish her ELCRA hostile work environment/harassment claims:

> (1) [t]he employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or create an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998); *see also Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009). An objective and subjective test must be met:

> the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive.

*Levesque*, 2011 WL 834080, at *8 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 21-22 (1993)).

In her Complaint, Plaintiff vaguely alleges that she "would consistently receive harassment related to the fact that she was older than her co-workers." (ECF No. 1 at PageID.12 ¶ 107.) No specific examples of this harassment are alleged. (*See generally* ECF No. 1.) In response to Defendants' motion, Plaintiff discusses only Defendants' accusations that she ignored patient alarms, resulting in her termination. (ECF No. 32 at PageID.465.) She provides no evidence of any age-based or race-based comments or other conduct directed at her because of her age or race. In her response brief, Plaintiff states that "she was subjected to heightened scrutiny," but does not elaborate upon what she means by "heightened scrutiny" beyond the incident that led to her termination. (ECF No. 32 at PageID.448-49 (citing ECF No. 33 at PageID.476 ¶ 18).)

A single incident, if sufficiently severe, can support a harassment claim. *See Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012) (citing *Radtke v. Everett*, 501 N.W.2d 155, 168 & n.40 (Mich. 1993)). Nevertheless, the incident Plaintiff describes is not the type of single incident generally found sufficient to create a hostile work environment. *See Hush v. Cedar Fair, L.P.*, 233 F. Supp. 3d 598, 604 (N.D. Ohio 2017) (citing *Ault v. Oberlin Coll.*, 620 F. App'x 395, 402 (6th Cir. 2015); *Kalich*, 679 F.3d at 474) ("extreme incidents such as rape or sexual assault" are typically sufficient for a hostile work environment claim based on an

isolated event). Moreover, as already discussed, Plaintiff fails to present evidence to suggest the incident was race- or age-based.

Plaintiff cites *Jackson v. Quanex Corp.*, 191 F.3d 647, 600 (6th 1999), to argue that the Court must look at the "totality of the circumstances" when assessing whether a hostile work environment was created or harassment occurred. (*See* ECF No. 32 at PageID.464-65.) But this argument seems misplaced in a case where only a single specific incident is presented. Absent additional facts, a reasonable jury could not find that Plaintiff was exposed to conduct so severe or pervasive that Henry Ford Hospital's ICU constituted a hostile or abusive work environment.

The Court therefore grants summary judgment on Plaintiff's ELCRA hostile work environment and harassment claims (Counts VI and VIII).

**d. Wrongful Discharge in Violation of Michigan Public Policy (Count X)**

Although Michigan courts generally allow employers to terminate at-will employees for any reason or no reason at all, the reason for termination cannot contravene public policy. *See Jackson*, 999 F.3d at 352-53 (citing *Humenny v. Genex Corp.*, 390 F.3d 901, 907 (6th Cir. 2004)). An at-will employee's termination violates public policy if:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is

> discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

*Id.* at 353 (citing *McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009)).

"[A] claim of discharge in violation of public policy is an extremely narrow and rarely recognized cause of action." *Gjokaj v. Crossmark, Inc.*, No. 07-11813, 2008 WL 1701532, at *7 (E.D. Mich. Apr. 10, 2008) (quoting *DiTomaso v. Elec. Data Sys.*, No. 87-CV-60320AA, 1988 WL 156317, at *4 (E.D. Mich. Oct. 7, 1988)) (alteration in original) (internal quotation marks omitted). "Michigan law requires the location of some legislative enactment to ground a finding that a discharge is in breach of public policy." *Id.* (quoting *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1236 (6th Cir. 1988)). Under Michigan law, "[t]he existence of the specific prohibition against retaliatory discharge in the [statute] is determinative of the viability of a public policy claim." *Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 819 (E.D. Mich. 2005) (quoting *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 645 (Mich. 1993)) (second alteration in original).

Plaintiff's wrongful termination in violation of Michigan public policy claim is precluded by the other claims she brings, which provide statutory relief for the conduct she complains of. In other words, because Title VII, ELCRA, and the ADEA provide an avenue for Plaintiff to recover for her alleged injuries, she has

no viable claim under Michigan public policy. *See Dortman*, 405 F. Supp. 2d at 819. For this reason, the Court is granting summary judgment on this claim.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 29) on each of Plaintiff's claims.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 13, 2026